IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| PANORAMA CONSTRUCTION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FARM CREDIT SERVICES OF ) | |
| CENTRAL KANSAS, FCLA and ) | |
| HEARTLAND RECOVERY TEXAS - ) | |
| F #1, LLC, ) | |
| ) | Civil Action No. 5:09-CV-273-C |
| Defendants. ) | ECF |

**AMENDED ORDER[1] AND MEMORANDUM OPINION**

On this day, the Court considered Plaintiff Panorama Construction Co., Inc.'s (Panorama) Motion to Remand and Objections and Motion to Strike Defendant's Evidence, filed January 25, 2010, along with Defendant Farm Credit Services of Central Kansas, FCLA's (Farm Credit) Response, filed February 15, 2010. After considering the relevant argument and authorities, the Court is of the opinion that Panorama's Motion to Remand should be DENIED and its Objections and Motion to Strike Defendant's Evidence should be DENIED.

**I.
BACKGROUND**

In late 2006, ANB Contractors, LLC (ANB) entered into a contract with Que and Debora Fullmer (the Fullmers) to construct a calf ranch and grow yard on certain property owned by the Fullmers in Bailey County, Texas. Thereafter, ANB, as the general contractor of the project,

---

[1]The Court has granted the parties' Joint Motion to Publish the Court's Order Denying Plaintiff's Motion to Remand. That order is amended hereby to make stylistic corrections prior to publication.

began to provide labor and/or material for the improvements pursuant to its agreement with the Fullmers. Meanwhile, Farm Credit agreed to finance the project, and during April of 2007, after ANB had begun providing labor and/or material to the Fullmers' property, Farm Credit filed and recorded two deeds of trust to secure a loan it made to the Fullmers for the construction of the improvements.

After a dispute arose between the Fullmers and ANB, ANB ceased working on the project. Eventually, the two parties reached separate settlement agreements and parted ways. Thereafter, the Fullmers entered into an agreement with Panorama to construct the calf ranch and grow yard. Soon after reaching the agreement, Panorama began providing labor and delivering materials as the new general contractor. Panorama later filed two separate affidavits claiming a mechanic's lien for various amounts on the Fullmers' property.[2]

When the Fullmers became insolvent and ceased making payments, the Fullmers' largest creditor, Farm Credit, foreclosed on the real property containing the calf ranch and the grow yard. Farm Credit foreclosed on this property on June 2, 2009. Heartland Recovery Texas–F#1, L.L.C. (Heartland), which Panorama represents is wholly owned by Farm Credit, is the current owner of the property.

On November 30, 2009, Panorama filed this suit in the 287th Judicial District Court of Bailey County, Texas, naming Farm Credit and Heartland as defendants. Panorama asserted various state law causes of action against Farm Credit, including fraud and tortious interference with a contract, and asserted a foreclosure action against Heartland. Farm Credit was served

---

[2]On November 10, 2008, Panorama alleges it filed an affidavit claiming a mechanic's lien in the amount of $32,391.00. On November 19, 2008, Panorama alleges it filed an affidavit claiming a mechanic's lien for the amount of $301,852.32.

2

with notice of the pending lawsuit on December 2, 2009, and removed the case to this Court on December 28 with Heartland's consent.

In its notice of removal, Farm Credit claims that the removal is proper because this Court has diversity jurisdiction over this action. Farm Credit asserts that it is a citizen of Kansas, Heartland is a citizen of Texas, and Panorama is a citizen of Idaho. On January 25, 2010, Panorama filed this motion to remand, claiming that the presence of an in-state defendant, Heartland, made the removal of this action improper. Farm Credit disagrees and asserts that removal is proper because Heartland was improperly joined. For the following reasons, the Court agrees.

## II.
## **STANDARD**

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). "The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar*, 47 F.3d at 1408. "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root*
3

*Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

## III.
## DISCUSSION

*I. Motion to Remand*

    *A. Improper Joinder*

Farm Credit removed this case on December 28, 2009, on the basis of diversity of citizenship. Under 28 U.S.C. § 1441, a defendant may remove a case on the basis of diversity of citizenship if none of the defendants is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b). Although the parties in this case are diverse, at first glance, removal appears to be improper because one of the defendants, Heartland, is a citizen of Texas. In its notice of removal, Farm Credit asserts that despite the presence of an in-state defendant, removal was proper under § 1441 because Heartland was improperly joined. Improper joinder is an exception to § 1441's general prohibition against removing cases with a in-state defendant. *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc) (favoring the term "improper joinder" over "fraudulent joinder"). An in-state defendant is considered improperly joined when the plaintiff has either incorrectly pleaded the jurisdictional facts concerning the in-state defendant or has pleaded a cause of action against the in-state defendant that the plaintiff cannot establish. *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). A plaintiff is unable to establish a cause of action against an in-state defendant when "there is no possibility of recovery by the plaintiff against [the] in-state defendant," that is, when "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [the] in-state defendant" under state law. *Id.*

4

To determine whether the plaintiff has a reasonable basis of recovery under state law, the court may conduct a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.*[3] If the plaintiff can survive a Rule 12(b)(6) challenge, then there is no improper joinder and the case must be remanded. However, there may be some cases in which a plaintiff has stated a claim but has misstated or omitted certain facts that would determine the propriety of the joinder. *Id.* In such cases, the district court may pierce the pleadings and conduct a summary inquiry, bearing in mind the inquiry is only to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery. *Id.* at 573-74. Finally, disputed questions of fact and ambiguities in the controlling state law must be resolved in the non-removing party's favor. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). The issue here is whether Panorama is able to establish its cause of action against Heartland, namely a foreclosure of its statutory and/or constitutional mechanic's lien against Heartland's property.[4] To determine whether Panorama can establish this cause of action, the Court must determine the priority of Panorama's lien with respect to Farm Credit's deed of trust.[5]

---

[3]The parties argue whether the Rule 12(b)(6)-type analysis in improper joinder is governed under the more restrictive *Twombly* standard or the more relaxed standard announced in *Conley*. *Compare Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) *with Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court need not decide which standard applies because the result would the same under either standard.

[4]In its state court petition, Panorama does not specify whether the lien arises under the Texas Constitution, statute, or both.

[5]The parties appear to agree that Farm Credit, ANB, and Panorama each perfected their respective liens on the subject property.

### B. Panorama's Foreclosure Cause of Action

In Panorama's state court petition, Panorama "requests foreclosure of its constitutional and/or statutory mechanic's lien" on certain property owned by Heartland. (*See* Notice of Removal Appx. 6.) Farm Credit argues that Panorama cannot establish its foreclosure action against Heartland because Farm Credit's prior foreclosure sale on the same property extinguished all junior liens, including Panorama's lien. *See Richard H. Sikes, Inc. v. L & N Consultants, Inc.*, 586 S.W.2d 950, 954 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.) ("[A] deed of trust lien existing upon the land prior to the time of inception of the mechanic's lien does not become subordinate to the mechanic's lien . . . [and a] foreclosure sale of the senior lien extinguishes the junior lien on the land and all improvements . . . ."). Panorama contends that despite acquiring its lien after Farm Credit recorded its deed of trust, its lien was superior to Farm Credit's deed of trust because the inception of Panorama's lien related back to a time prior to the deed's recording. Hence, Panorama concludes, Farm Credit's foreclosure sale did not extinguish Panorama's lien and Panorama can potentially seek a foreclosure sale.

Under Texas law, mechanic's liens may be provided for by contract, the Texas Constitution, or statute. *See* Tex. Const. Art. 16 § 37; Tex. Prop. Code § 53.021 (Vernon 2007). When determining the priority of a mechanic's lien along with other claims, a court must determine when the lien attaches to the property. Once perfected, the mechanic's lien will generally relate back to and attach at the date of the lien's inception. *Diversified Mortg. v. Lloyd D. Blaylock, Etc.*, 576 S.W.2d 794, 800 (Tex. 1978); *see also* Tex. Prop. Code § 53.124. The inception of a mechanic's lien can occur at the earliest of three events:

> (1) the visible commencement of actual construction of improvements upon the relevant property, which said

6

> improvements are ultimately incorporated or made a part of the
> finished improvements; (2) the delivery of visible materials to the
> relevant property provided that the visible materials are actually
> used in the permanent improvement and not merely for some
> temporary use . . . or (3) the public recordation of a written
> construction contract or sworn affidavit evidencing an oral
> construction contract.

*First Fed. Sav. & Loan Ass'n of Beaumont v. Stewart Title Co.*, 732 S.W.2d 98, 111 (Tex. App.—Beaumont 1987, writ denied); *see also* Tex. Prop. Code § 53.124(a). The mechanic's lien will take priority over any transfer of interest occurring after the date of the lien's inception. *Valdez v. Diamond Shamrock Ref.*, 842 S.W.2d 273, 276 (Tex. 1992).

Panorama argues that its lien should relate back to the lien created by ANB's contract with the Fullers in 2006. In support, Panorama cites *Oriental Hotel Company v. Griffiths*, in which the Texas Supreme Court first discussed the relation-back doctrine. In *Oriental*, Griffiths, a general contractor, entered into a contract with Oriental Hotel Company to build a hotel on property owned by Oriental Hotel Company. *See* 88 Tex. 574, 33 S.W. 652, 659 (1895). After Griffiths perfected its lien and commenced construction of the hotel, Oriental Hotel Company conveyed an interest in the property to the project's underwriter, the St. Louis Trust Company, which promptly recorded its deed of trust. *Id.* After the trust company recorded its deed of trust, the plaintiffs, under separate contracts, began furnishing materials and performing labor for the hotel's construction in accordance with the plans outlined in Griffiths' contract. *Id.* Each plaintiff subsequently perfected liens under the applicable law. In determining the issue of priority, the Texas Supreme Court held that the plaintiffs' liens, although arising out of contracts created after the trust company had recorded its deed of trust, took priority over the deed of trust

7

because the plaintiffs' liens had their inception at the same time that Griffiths' lien had its inception. *Id.* at 663. The court reasoned that

> [w]hen the building has been projected, and construction of it entered upon,—that is, contracted for,—the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute and in this state of circumstances the lien to secure each has its "inception."

*Id.* at 662. Thus, the Court concluded, the plaintiffs' liens related back to the general contractor's lien and inception took place prior to the recording of the deed of trust. *Id.* at 662-63. Panorama argues that the relation-back doctrine as announced in *Oriental* would have Panorama's lien relate back to ANB's 2006 contract because the ANB contract established a continuing project—the construction of a calf ranch and grow yard—which Panorama sought to complete. *See also Finger Furniture Co. v. Chase Manhattan Bank*, 413 S.W.2d 131, 137 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.) ("[A] general construction contract was executed . . . and work was performed thereunder prior to the execution and recording of the deed of trust . . . . The constitutional liens . . . arose in performance of work and furnishing of materials clearly contemplated by the plans and specifications of this general contract. Therefore, under the 'relation back' rule of *Oriental Hotel Co. v. Griffiths*, *supra*, these liens had their inception prior to [the deed of trust lien] and therefore [were] superior to the deed of trust lien . . . .").

If the Court were restricted to the facts alleged in Panorama's state court petition, the Court might be inclined to agree with Panorama; nothing appears to foreclose the possibility that Panorama's lien could relate back to ANB's lien. Under Panorama's facts, ANB, as the original general contractor, entered a contract for construction of a calf ranch and grow yard. Like the

8

hotel in *Oriental*, the calf ranch was a continuing project established by a contract that existed both prior to and after Farm Credit's recording of the deed of trust. That Panorama commenced its work under a contract subsequent to the ANB contract would be of no consequence because it appears that Panorama's work would simply be part of the same continuing project and that such work would be necessary to the project's completion and called for by the ANB contract. Hence, Panorama's lien could relate back to ANB's lien and be found superior to Farm Credit's deed of trust, thus surviving Farm Credit's foreclosure. If such were the case, the Court would be inclined to remand this action.

However, the Court is not bound by Panorama's allegations. As previously noted, in improper joinder cases, a district court may, in its discretion, pierce a plaintiff's pleadings when a plaintiff omits certain undisputed facts that would determine the propriety of the in-state defendant's joinder. Here, Farm Credit presents such undisputed facts.[6] Farm Credit alleges that Panorama omitted from its state court petition that the Fullmers' 2006 contract with ANB, to which Panorama's contract purportedly relates back, was terminated prior to Panorama entering its agreement with the Fullmers. Farm Credit shows that a dispute between ANB and the Fullmers arose in late 2007 and resulted in two settlement agreements, one entered into on January 30, 2008, and the other entered into on April 9, 2008. Under the terms of a second settlement, ANB and the Fullmers terminated the 2006 contract and all construction of the calf ranch and grow yard ceased until Panorama entered into a separate agreement with the Fullmers on June 19, 2008, and began work on the project the following month.

---

[6]Panorama included these additional facts in its Motion to Remand.

The termination of the 2006 ANB contract is of significance. The relation-back doctrine in *Oriental* was premised upon the presence of a contract that was in effect both prior to the deed's recording and at the time the subsequent laborers entered into their contracts for work. *See Oriental*, 33 S.W. at 662 ("When the building has been projected, and construction of it entered upon,—that is, *contracted* for,—the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise . . . .") (emphasis added); *see also Finger Furniture Co.*, 413 S.W.2d at 137. The court in *Oriental* reasoned that because the plaintiffs' contracts were necessary to complete the work called for by the general contract, these subsequent contracts should be treated not like new agreements, but rather modifications of or alterations to the general contract, as if the future laborers had been parties to the original contract and were merely filling in the details to the prior contract. *See Oriental*, 33 S.W. at 662. Hence, from the plaintiffs' perspective, because their contracts were contemplated by the original general contract, the plaintiffs' contracts, and their resulting liens, were treated as if they were part of the original general contract. *Id.*

Although not specifically discussed in *Oriental*, the inverse of this reasoning should be equally true. Absent the presence of a continuing general contract to which subsequent contracts could attach, the relation-back doctrine should not apply because there would be no prior contract to "alter" or "modify." The subsequent contracts would simply stand on their own. *See Matter of Waller Creek, Ltd.*, 867 F.2d 228, 236 (5th Cir. 1989) ("[D]espite the common-law principle in Texas that courts should construe the statutory provisions for mechanic's liens broadly, the competing principle announced by [*Lyon v. Logan*, 68 Tex. 521, 5 S.W. 72 (1887)], that an owner may limit the scope of mechanic's and materialman's liens by negotiating separate

contracts for improvements, applies with convincing force . . . ." (footnote omitted)). Such is the case here. Because the ANB contract had been terminated prior to Panorama's contract, unlike *Oriental*, there was no continuing general contract to which Panorama's contract, and the resulting lien, could relate back. *Oriental* and its progeny are, thus, distinguishable. Instead, Panorama's contract is a separate contract calling for a separate project. *See Waller Creek*, 867 F.2d at 236. While Panorama argues that the project established by the ANB contract was continuing even after the contract's termination, the only thing that made the project continuing was Fullmers' intention to complete the project, which had apparently not changed since 2006. However, Texas law is clear that an owner's mere intention to improve property is insufficient to create a lien or enable a lien to relate back in time.[7] Further, if the Court applied the relation-back doctrine despite ANB's terminated contract, the Court would create the odd result of treating Panorama's contract as an alteration to or modification of a contract that was no longer effective. All these reasons counsel against the Court applying the relation-back doctrine here.

This conclusion is only strengthened when considering the relation-back doctrine in the context of the rules of conveyance, namely, that property owners cannot convey an interest in property greater than they own. *See Diversified Mortg. v. Lloyd D. Blaylock, Etc.*, 576 S.W.2d 794, 805 (Tex. 1978) (citing *Irving Lumber Co. v. Alltex Mortg. Co.*, 468 S.W.2d 341 (Tex. 1971)). In cases like *Oriental*, while future laborers might be contemplated under the general

---

[7]*McConnell v. Mortgage Inv. Co. of El Paso*, 157 Tex. 572, 305 S.W.2d 280, 284 (1957) ("If it were held that the mere fact that an intention existed in the mind of the mortgagor to use the funds raised by the mortgage in the improvement of property creates a lien in favor of all persons who should thereafter contract with him for making that improvement, it would broaden the constitutional and statutory provisions so as to create many complications in this class of business.") (quoting *Sullivan v. Tex. Briquette & Coal Co.*, 94 Tex. 541, 63 S.W. 307, 308 (1901)).

11

contract, these future laborers are not conveyed an interest in the owner's property at that point in time. However, when the relation-back doctrine deems that these future workers' liens in the property are given the same status as the liens held by the general contractor who received an interest at a prior point in time, the relation-back doctrine might be viewed as allowing property owners to convey to these future laborers a greater interest in their property than they own at a given point in time. This apparent conflict is eased by engaging in a simple legal fiction.[8] Just as the subsequent workers' contracts, though occurring later in time, are deemed to be effective for purposes of determining lien inception at the time the original general contract was entered into, so, too, the conveyances to these future workers, though later in time, are deemed to have occurred at an earlier time when the owner held a greater interest in the property. In essence, when the relation-back doctrine applies, the property owner is not granting a new interest in property but is grafting the interest conveyed to these future laborers and workers into the same interest conveyed earlier to the general contractor.

---

[8]The Court reads *Irving Lumber Co. v. Alltex Mortgage Co.* as holding that the relation-back doctrine in *Oriental* is subordinate to the rules of conveyance. *Compare* 468 S.W.2d 341, 343-44 (Tex. 1971) *with id.* at 344, 345-46 (McGee, J., dissenting) (disagreeing with the majority and citing *Oriental* for the proposition that "the date of the contract establishes the time of inception of the mechanics' and materialmen's lien," regardless of whether the owner has an interest in the property at the time the contract was entered). In *Irving*, the majority held that a general contractor's lien was inferior to a lender's deed of trust even though the general contractor's agreement was formed prior to the lender's recording of the deed of trust. The majority reasoned that because the property owner did not own the property to be improved at the time the owner entered into the agreement with the contractor, the property owner could not have conveyed any interest in the property at that time. *Id.* at 343-44. Instead, the earliest the owner could have conveyed an interest in the property was at the time the owner acquired an interest in the property; and because the owner acquired an interest in the property subject to a deed of trust, the owner could only have conveyed an interest subject to that deed of trust. *Id.*

While this legal fiction might work in fact scenarios like the one in *Oriental*, here the retroactive conveyance makes little sense. If the relation-back doctrine applied here, the Fullmers would be construed as conveying the same interest to Panorama in 2008 as they conveyed to ANB in 2006, when the Fullmers owned the property clear of Farm Credit's deed. The problem is that ANB's interest in the Fullmers' property was premised upon work contemplated under the construction contract, and it is undisputed that both ANB's contract and its interest in the Fullmers' property were terminated by the settlement agreements ANB and the Fullmers entered into in early 2008. Hence, to engage in the legal fiction here would be to deem the Fullmers as conveying an interest to Panorama that no longer exists. Again, this would counsel against applying the relation-back doctrine.

Whether the doctrine is viewed from the perspective of the property owners—as a retroactive conveyance—or from the perspective of the future laborers—as an alteration to a prior contract—applying the relation-back doctrine in this case does not make sense. Under Farm Credit's undisputed facts, to find that Panorama's lien was superior to Farm Credit's deed of trust, the Court would have to find (1) that the relation-back doctrine applies despite the absence of a continuing project, which case law does not support; (2) that the Fullers conveyed a greater interest in their property than they owned, which Texas law does not allow; or (3) that the contract between ANB and the Fullmers was continuing, which is contrary to the undisputed facts. The Court is unaware of any legal theory that supports finding Panorama's lien superior to Farm Credit's deed of trust. Hence, absent applying the relation-back doctrine, the only interest the Fullmers could have conveyed to Panorama was an interest burdened by Farm Credit's deed of trust.

Therefore, after considering Panorama's allegations in the state court petition along with Farm Credit's undisputed facts, the Court is of the opinion that Panorama will be unable to establish its foreclosure claim against Heartland. The Court finds that Panorama's lien was junior to Farm Credit's deed of trust. When Farm Credit foreclosed on its deed of trust, it extinguished all subsequent liens, including Panorama's lien. As such, Panorama no longer has a lien on Heartland's property and Panorama's claim to foreclose on Heartland's property should be dismissed. Further, because there is no other cause asserted against Heartland, Heartland is not a proper party to this suit and should be dismissed. Accordingly, the Court agrees with Farm Credit that Heartland has been improperly joined, that Panorama's state court petition was properly removed, and that Panorama's motion to remand should be denied.

## II. *Panorama's Motion to Strike*

Panorama also moved to strike exhibits A, B, and C attached to Farm Credit's notice of removal to the extent such are offered as documentary evidence supporting removal. Farm Credit asserts that evidence supporting removal, including the documents attached to its notice of removal, have been properly authenticated and attached to its Response to Panorama's Motion to Remand. The Court so finds and will order that Panorama's motion to strike be denied.

## IV.
## CONCLUSION

Therefore, for the reasons stated herein, Panorama's Motion to Remand is DENIED and Panorama's Motion to Strike is DENIED.

Panorama's cause of action against Heartland is DISMISSED with prejudice.

SO ORDERED this 20th day of August, 2010.

_____
SAM R. CUMMINGS
UNITED STATES DISTRICT COURT